This action was brought by John Wiley Clark and his wife, Cynthia, to recover for injuries sustained by Clark in a head-on collision with 19-year old Bruce Bosarge on January 10, 1980. Bosarge was killed in the accident. Clark's complaint, filed on March 1, 1983, alleged that Bosarge had become intoxicated at Silver's Lounge on the night before the incident. Silver's was owned and operated by the Velardo's, in space leased to them by the Travel Motor Inn. After leaving the lounge, Bosarge was involved in a minor traffic accident and was arrested for DWI. He was arrested by Pascagoula Police after the 2:17 a.m. accident, and an intoxilizer test taken at about 3:30 a.m. showed a blood/alcohol result of .22%. Pascagoula police released Bosarge to his mother about an hour later, with instructions to keep him at home in bed for five hours. The fatal accident between Bosarge and Clark occurred approximately 2 1/4 hours after his release, at about 6:45 a.m. Bosarge was killed instantly, and Clark was rendered a quadriplegic. A *Page 72 
blood sample drawn from Bosarge's body four hours later, at 10:35 a.m., showed his blood-alcohol content to be .08%.
Clark originally sued the City of Pascagoula, Silver's Lounge, the Velardos, the Estate of Bruce Bosarge, Allstate Insurance, and Home Insurance. Allstate and Home Insurance were dismissed by the trial court prior to trial. The Estate of Bruce Bosarge settled immediately prior to trial by paying the plaintiffs $10,000, which was the amount of Bruce's insurance.
The remaining defendants' case rested primarily on two points: 1) that the blood alcohol test taken after Bruce's death showed that he was not intoxicated at the time of the accident; and 2) that any negligence on their part was superseded by the action of Bosarge's parents in allowing him to drive before five hours had elapsed. Additionally, Travel Motor Inn defended on grounds that it was not the holder of the liquor license under which Bosarge was alleged to be served.
The jury returned a verdict for all of the defendants. The Clarks have appealed, and assign as error forty items, which may be summarized as follows:
1) Allowing Dr. Dore to testify as an expert witness for the defendants, even though he was not listed as a witness for them prior to trial.
2) Allowing evidence of a blood chemical test taken from a sample drawn four hours after Bosarge's death.
3) Excluding testimony from two witnesses for the plaintiffs regarding the alleged practice of Pascagoula Police of keeping DUI offenders in jail for five hours.
4) Excluding testimony of one of the above-mentioned witnesses regarding his seeing Bosarge in Silver's Lounge the night before the accident.
5) Setting aside a default judgment taken against Silver's Lounge and the Velardo's.
6) Dismissing Allstate Insurance Company and Home Insurance Company.
7) Erroneously instructing the jury that the Bosarge parents' actions, or the negligent driving of Bosarge, could be superseding, intervening causes of Clark's injuries.
 FACTS
Nineteen-year-old Bruce Bosarge spent a good part of the late evening and early morning hours of January 9-10, 1980, drinking at Silver's Lounge. Laura Barrett, a waitress for Silver's, testified that she observed him drinking from a highball glass, and her impression was that he was visibly intoxicated.
Silver's was a local disco owned and operated by Michael and Nick Velardo. They leased the space for the lounge from the Travel Motor Inn. Under the terms of the lease agreement, Silver's rental was based upon a percentage of its gross sales. Silver's was also obligated to keep the lounge open at certain times, and to provide room service to guests of the hotel. Although Silver's held the liquor license under which it operated, the lease provided that, upon termination, the license would go back to the Travel Motor Inn. At the time of this incident, the Travel Motor Inn was closed for repairs necessitated by Hurricane Frederick.
Michael Velardo testified that he saw Bosarge in his club on the night of January 9 or the morning of January 10, and, realizing how intoxicated he was, told Larry Griffith, a club employee, to take him home. They left at about 1:45 a.m., Bosarge driving his orange Capri, and Griffith following.
At approximately 2:17 a.m., Pascagoula Police received a report from Mrs. Debbie Ogle that a car had run over the chain link fence in her back yard, and was driving through her yard. When Officer Lee Oman arrived at the scene, Bosarge was attempting to back his car out of Mrs. Ogle's yard. It appeared that Bosarge had run over the fence and a bush, and that he was stopped by the fence at the other side of the yard. Bosarge's story was that he had been run off the road by another car; however, since he was obviously intoxicated, the police took him in custody. Griffith was allowed to drive Bosarge's car home.
Bosarge took an intoxilizer test at the Pascagoula Police Department at about *Page 73 
3:30 a.m. It registered .22. Bosarge was told that he could make one phone call, and he called his mother, who came to the station to bail him out. The police did not check Bosarge's previous arrest record, which included possession of marijuana and paraphernalia, three speeding tickets, reckless driving, running a stop sign, no driver's license and no inspection sticker. Instead, the police released Bosarge to his mother, on the condition that she take him home, put him to bed, and not let him out for five hours. Bosarge, who appeared to be acting more normally than at the time of his arrest, was released in the custody of his mother at about 4:30 a.m.
Mrs. Bosarge took Bruce home, and he went to bed. However, she did not keep him there for five hours, but woke him in time for him to get to work at 7:00 a.m. at Corning Glassworks. He got up and ate breakfast, but, before he left the house, Bruce and his father got into an argument about his DUI. Bruce apparently left the house in an agitated condition, thinking that he was going to be late for work.
To get to Corning, Bruce had to travel down Industrial Road. Also on that road the morning of January 10 was Wiley Clark, a 23-year-old electrician who was giving a friend a lift to work. Wiley had just dropped his friend off and was heading north on Industrial Road, at about 50-55 mph, when he saw Bosarge's car heading south in the same lane. Several witnesses testified that Bosarge passed them that morning doing 70-75 mph. Bosarge was trying to pass several vehicles when it became obvious that he and Clark were about to collide. According to witness Charles Goode, Goode tried to pull off onto the shoulder so that Bosarge could get back into the proper lane. Clark also headed toward the opposite shoulder to avoid the collision. Bosarge, however, pulled off the road to the left, and his Capri hit Clark's Blazer head-on.
The impact killed Bosarge instantly; witnesses who stopped immediately testified that he had no pulse. Officer Douglas Anglada of the Mississippi Highway Patrol got a call on the accident at 6:58 a.m. and went immediately to investigate it. He testified that he could smell alcohol around Bosarge's car. Because of the smell, and because it was routine when there was an accident fatality, he requested an alcohol test on Bosarge. As stated earlier, the sample for the test was drawn at 10:30 a.m., and processed at about 12:45 p.m. and showed an alcohol level of .08%.
Clark was thrown from his vehicle on impact. He immediately realized that he was seriously injured, since he did not lose consciousness, but could not move his arms or legs. He testified that he found himself in a ditch choking on mud and grass, and had to clean his mouth out with his tongue. He was immediately taken to the emergency room where Dr. John McCloskey, a neurosurgeon, diagnosed him as having a broken neck.
According to Dr. McCloskey, Clark is a partial quadriplegic, as the result of having his seventh vertebrae crushed, and his sixth vertebrae moved forward onto it. He has no control of his back or legs, some control of his arms, control of his neck, and 1/2 of his ability to breathe. He is numb from his abdomen down.
Clark's injuries are, of course, catastrophic. He had two children — 2 1/4 years old and 1 1/2 months old — at the time of the accident. Because of his injuries, he will spend the rest of his life in a wheelchair. Medical witnesses testified at length about the problems that Clark has suffered and will continue to suffer because of the incident. They also testified that, despite some periods of depression, Clark has made an excellent adjustment, due to his own mental attitude and the support of his wife and family. Since the accident, Clark has completed about 1/2 of the course toward a general business/accounting degree.
The Clarks originally sued the City of Pascagoula, Home Insurance, Silver's Lounge, the Velardo's, the Travel Motor Inn, the Estate of Bruce Bosarge, and Allstate Insurance Company, asking for $300,000.00 — in actual damages and $1,000,000.00 in punitive damages. As stated earlier, the insurance companies were ultimately dismissed. Service upon Silver's *Page 74 
Lounge and the Velardo's was had by serving attorney Fielding Wright. When these parties did not answer, a default judgment was taken against them. (The record is confusing on this point. The Appellant's Brief indicates that a default judgment was taken against all three of these defendants. The record shows that a motion for entry of default was made and an order entered againstonly Silver's Lounge and Nick Velardo. However, Silver's andboth of the Velardo's moved to set aside the default judgment, and the court's order setting aside the default judgment as to Silver's and Nick Velardo also gave Michael Velardo five days to file responsive pleadings.)
The plaintiffs listed Dr. Donald Dore as an expert witness for their side, prior to trial. However, they never called Dr. Dore, and the defendants called him to testify, over the plaintiffs' objection, during their case. Dr. Dore was the physician who drew blood from Bosarge's body after the accident. He testified that the sample should not have changed significantly from the time of death, at approximately 6:30, to the time when the same was drawn, at approximately 10:30. Thus, the conclusion could be drawn that, at the time of death, Bosarge's alcohol level was at .08, or below the level of intoxication. However, when asked how much Bosarge's alcohol level should have changed from 3:30 a.m. when he was tested at .22% and 6:37 a.m., the time of the fatal accident, Dore said that he could not, as a clinical pathologist, make an estimate, but that an estimate should come from a toxicologist or a forensic pathologist. Dr. Dewey Lane, a surgeon who is chairman of Physicians Against Drunk Driving, later testified that based on a .22 level at 3:30, Bosarge should have been at about 1.6 at 6:30. It is nowhere to be found in the evidence in this record, but Raymond Brown, attorney for the City of Pascagoula, stated (without objection) during closing argument that the reason the blood alcohol level would not have changed significantly from the time of death until the second blood test was made at 10:30 a.m. was that the liver stopped functioning to filter out alcohol.
The plaintiffs attempted to make out a case that the City of Pascagoula was negligent for failing to follow their standard practice of restraining drunken drivers for five hours before releasing them on bond. Several policemen testified that the alleged "five-hour rule" was only a guideline, and that a decision was made to keep someone or let them go based upon the specific circumstances of that case. Authority rested with the shift captain, and the testimony was to the effect that bonding out was allowed if the person taking custody of the person was responsible.
After this evidence, the plaintiffs attempted to offer two witnesses in rebuttal. Luther Kuykendall and Francis Larson both would have testified that they had been arrested for DUI and told that they could not be released to anyone for five hours. Additionally, Kuykendall would have testified to seeing Bosarge at Silver's Lounge, intoxicated, on the night before the accident. However, since their arrests did not occur until 1983 or 1984, three or four years after the arrest of Bosarge, the court disallowed their testimony.
The case went to the jury with instructions requested by the defendants on superseding and intervening cause. In particular, 4D1, 4D2, and 4D3 were substantially the same, and offered for the city, Travel Motor Inn, and Silver's (and the Velardo's). Instruction 4D1 is set out below:
 The Court instructs the jury that a superseding or intervening cause is an independent and unforeseeable act of omission by a third person which follows the negligence, if any, of a defendant and is a substantial factor in causing the plaintiff's injuries and/or damages; thus, a superseding cause becomes a proximate cause for the injuries and/or damages sustained by the plaintiffs, and the negligence, if any, of the defendant becomes a remote cause for which the defendant is not liable.
 If you find, from a preponderance of the evidence, that the Defendant, City of Pascagoula, was negligent, but that an independent and unforeseeable negligent *Page 75 
act or omission, if any, by a third person, such as (1) entrustment of a vehicle to, or permitting operation of a vehicle by, a person whose condition was such that operation of a vehicle by such person created a danger to that person and to others, if you so believe from a preponderance of the evidence, or (2) operation of a vehicle in a negligent manner, if you so believe from a preponderance of the evidence, were substantial factors in causing the Plaintiffs' injuries and/or damages, then the Defendant, City of Pascagoula, is not liable for the injuries and/or damages which proximately resulted from the superseding cause or causes.
The jury returned a verdict for the defendants.
I. ALLOWING DR. DORE TO TESTIFY.
Although the defendants had never listed Dr. Dore as an expert witness, they called him to correct an earlier error in testimony. Officer Anglada of the Mississippi Highway Patrol testified that the blood test run after Bosarge's death showed a blood alcohol content of .22%, obviously confusing it with the earlier intoxilizer test. Dr. Dore, as a physician who ran the test, was needed as a witness to clarify the error.
This testimony was not admitted in error, notwithstanding the procedures announced in Harris v. General Host Corp.,503 So.2d 795 (Miss. 1986); Boyd v. Lynch, 493 So.2d 1315 (Miss. 1986);Square D v. Edwards, 419 So.2d 1327 (Miss. 1982) and Huff v.Polk, 408 So.2d 1368 (Miss. 1982). In Harris, Justice Robertson wrote:
 General Host's claim that Dr. Allen was a `rebuttal witness' profits it nothing. There is nothing in our rules of procedure that authorizes a party to withhold the names of likely expert witnesses on such grounds, except only for the circumstance where the party had no reasonable means of anticipating in advance of trial the need for calling the witness.
503 So.2d at 797 [emphasis added]. Here, the need for Dr. Dore to rebut the erroneous testimony of Officer Anglada did not appear until the time of trial. Furthermore, the plaintiffs could not have been surprised by this testimony, because they had already listed him as a witness and knew what his testimony would be. They were also able to rebut Dr. Dore's testimony through the testimony of Dr. Lane. Thus, there is no reversible error here.
II. ADMISSION OF THE BLOOD ALCOHOL TEST.
The blood sample drawn from Bosarge's body was ordered by Officer Anglada of the Highway Patrol, in compliance with Miss. Code Ann. § 63-11-7 (1972), which states:
 If any person be unconscious or dead as a result of an accident . . . such person shall be subjected to a blood test for the purpose of determining the alcoholic content of his blood . . . if the arresting officer has reasonable grounds to believe the person to have been driving . . . while under the influence of intoxicating liquor. The results of such test or tests, however, shall not be used in evidence against such person in any court . . . without the consent of the person so tested, or, if deceased, such person's legal representative.
Miss. Code Ann. § 63-11-43 (1972) also prohibits the use of a blood test, stating:
 Neither results of a chemical test under the provisions of this chapter, nor the fact of submission to or refusal of such test shall be admissible in a civil case.
When read together, it is obvious that these two statutes are intended to protect the interests of the person submitted to a blood alcohol test, in a civil case. In this case, the results of the test were submitted in defense of the person tested. Furthermore, any protection given by the statute was waived by the decedent's representative. Therefore, it was not error to allow the introduction of the results of this test.
III. DISALLOWANCE OF REBUTTAL TESTIMONY.
The appellants argue here that the trial court erred in not allowing them to present *Page 76 
testimony from witnesses Kuykendall and Larson, who were arrested for DUI a few years after Bosarge and told they would have to remain incarcerated for five hours. Additionally, Kuykendall would have testified that he saw Bosarge in Silver's Lounge, intoxicated, on the night of January 9.
The trial court enjoys discretion in the admission of rebuttal evidence. White v. Weitz, 169 Miss. 102, 152 So. 484 (1934). Although the trial court should allow the plaintiff a great deal of latitude in presenting his case, we cannot say that the trial judge in this case abused his discretion in excluding the evidence in question. Pascagoula Police testified that five hours was a guideline, not a rule, and that the guideline was applied subjectively, depending upon the circumstances. The fact that Kuykendall and Larson were told three or four years later that they would have to remain in jail for five hours would not have necessarily rebutted that testimony. The testimony on Bosarge's intoxication was cumulative, as the defendants and their agents had already admitted that Bosarge was in Silver's Lounge, intoxicated, on the night of January 9 and the morning of January 10, 1980. There is no merit to this assignment of error.
IV. JURY INSTRUCTIONS.
The defendants were each granted an instruction on superseding/intervening cause, which stated that the negligent entrustment of a vehicle to Bosarge, or his negligent operation of a vehicle, could relieve the defendants of liability, if they were "substantial factors in causing the Plaintiffs' injuries and/or damages." The issue here is two-fold: 1) whether the jury was entitled to be instructed on the theory of intervening, or superseding, cause; and 2) if so, was it properly instructed?
The accident between Bosarge and Clark did not occur immediately after Bosarge left Silver's Lounge, or even immediately after he left the Pascagoula City Jail. Instead, Bosarge was arrested, released to go home, went to bed, awoke an hour or two later, had an argument with his father, and left his home later for work. With each succeeding occurrence, the thread between Bosarge and the defendants weakened. In light of these circumstances, we believe that an intervening cause instruction was proper.
As to the propriety of the instructions themselves, we believe that Instructions 4D1, 4D2, and 4D3 do not properly state the law. Specifically, we condemn an instruction which would tell the jury that they may find that a defendant negligently sold alcohol to an intoxicated minor, but find that the minor's negligent operation of a vehicle was the intervening cause of a resulting accident. The minor's negligent operation of a vehicle is a foreseeable occurrence following his purchase of alcohol. As stated in Solomon v. Continental Baking Co., 172 Miss. 388,160 So. 732 (1935):
 [W]here an act of negligence is a substantial factor in bringing about an injury, it does not cease to be a legal and proximate cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act.
172 Miss. at 393, 160 So. at 733 [emphasis added].
If these instructions were viewed in a vacuum, we would find reversible error in this case. However, the court also instructed the jury, in Instructions P-6 and P-7, that it could find for the plaintiffs if the defendants failed to use ordinary care in selling alcoholic beverages to Bosarge, and the sale proximately caused Clark's injuries. The jury was also told in Instruction P-9A that the City of Pascagoula could be found negligent if it breached the duty of a reasonable police department and caused Clark to suffer foreseeable injuries. Finally, Instruction P-15A told the jury that the defendants could be liable if they contributed to the cause of the accident. After viewing the jury instructions in their entirety, we are of the opinion that no reversible error occurred. *Page 77 
V. SETTING ASIDE THE DEFAULT JUDGMENT AGAINST SILVER'S AND THE VELARDO'S.
The motions filed with the trial court to set aside the default judgment taken against Silver's and Nick Velardo alleged that the court was without jurisdiction, and that the defendant had a meritorious defense. The court made no specific findings on either of these assertions in its order, but merely set aside the default judgments.
In Bryant, Inc. v. Walters, 493 So.2d 933 (Miss. 1986), this Court wrote that the circuit court judges possess discretionary power in setting aside default judgments:
 Indeed, upon a showing by the defendant that he has a meritorious defense, we would encourage trial judges to set aside default judgments in a case where, as here, no prejudice would result to the plaintiff. The importance of litigants having a trial on the merits should always be a serious consideration by a trial judge in such matters.
Id. at 937, n. 3. Thus, any error made by a trial judge should be in the direction of setting aside a default judgment and proceeding with trial, as was done in this case. We, therefore, decline to reverse on this assignment of error.
VI. DISMISSAL OF THE INSURANCE COMPANIES.
Allstate and Home Insurance were named as original defendants to this suit. They were both dismissed by the court, on grounds that there was no statutory right of direct action. The appellants assert this as error, citing Rule 18, Miss.R.Civ.Proc., and its provision for liberal joinder of parties.
The rule in this state is that there is no right of direct action against an insurer. Smith v. City of West Point,475 So.2d 816 (Miss. 1985). There is no merit to this assignment.
We find it unnecessary to address any of the remaining assignments of error proferred by the plaintiffs. Finding no reversible error in this case, we affirm the judgment of the court below.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.