743 So.2d 1020 (1999)
TITAN INDEMNITY COMPANY, Appellant,
v.
Dwight WILLIAMS, NCM, By and Through His Mother, Next Friend and Conservator, Bessie Williams, Appellee.
No. 98-CA-00361-COA.
Court of Appeals of Mississippi.
May 18, 1999.
*1021 Robert O. Allen, Sally Burchfield Doty, Brookhaven, Attorneys for Appellant.
Merrimen McKay Watkins, Crystal Springs, Attorney for Appellee.
BEFORE KING, P.J., BRIDGES, DIAZ AND LEE, JJ.
*1022 DIAZ, J., for the Court:
¶ 1. This appeal arises from a complaint for declaratory judgment seeking a determination of whether either of two liability policies issued to the Hazlehurst Separate School District by the Titan Indemnity Company provided coverage for a claim for damages filed on behalf of Dwight Williams against the District, its school superintendent, members of the school board, and two teachers. The chancellor found that the "claims made" policy issued by the insurer provided coverage for the District. Aggrieved by the decision, Titan now asks this Court to consider whether the complaint for declaratory judgment is an impermissible direct action against an insurance company; whether the lower court's extension of the policy's notice requirement effectively re-wrote the contract of insurance between the District and Titan; and whether the professional liability exclusion contained within the policy prohibits coverage for Williams' claims. We find that Williams had standing to seek a declaratory judgment in this case. However, the chancellor's decision effectively converted a "claims made" policy to an occurrence policy, impermissibly rewriting the contract between the insured and the insurer. So finding, we do not reach the merits of whether the professional services exclusion of that policy was applicable, but note the chancellor's error in concluding that the "professional services" provided by a teacher do not include disciplinary and supervisory responsibilities. We therefore reverse and render the lower court's decision.

FACTS
¶ 2. On March 30, 1994, Dwight Williams, through his mother, Bessie Williams, filed suit against the Hazlehurst School District, the school superintendent, members of the school board and two teachers in the Circuit Court of Copiah County. The complaint alleged that Williams, who has Downs Syndrome, had been sexually abused at school by unidentified fellow students six and one-half years earlier in the fall of 1987, when he was a fifteen-year-old special education student in the District. Prior to the filing of the lawsuit, the District had received a written notice of a claim for damages from Williams' attorney on August 26, 1993.
¶ 3. On August 30, 1993, the District filed a general liability loss claim with its insurance carrier, Titan Indemnity Company. After investigating the claim, Titan advised the District that coverage was denied under Policy No.11-CM-01309 because of the policy's "abuse and molestation" exclusion. Williams then filed a declaratory judgment action in the chancery court to determine if coverage existed under that policy and further, whether an additional policy issued to the District, No.11-CM-00333, provided coverage. In his findings of fact and conclusions of law, the chancellor held that the "abuse and molestation" exclusion contained within the policy was indeed valid. However, he held that the second policy, a so-called "claims made" policy, provided the District with alternate coverage. Titan now appeals the chancellor's finding that it is liable to the District pursuant to the "claims made" provisions of the policy covering the period between February 4, 1988 and February 4, 1989. The policy contained a 180-day extension period for notice of claims, thus providing coverage for claims made through August 2, 1989.

DISCUSSION

I. WHETHER THE DECLARATORY JUDGMENT ACTION IS AN IMPERMISSIBLE DIRECT ACTION AGAINST AN INSURANCE COMPANY
¶ 4. As a threshold defense, Titan argues that Williams lacks standing to bring this action. Relying on Westmoreland v. Raper, 511 So.2d 884 (Miss.1987), Titan claims that the prohibition against direct actions by third parties on insurance policies bars Williams' request for declaratory *1023 judgment. Titan's reliance on Westmoreland and its progeny is misplaced. Rule 57 of the Mississippi Rules of Civil Procedure affords Williams the opportunity to have his rights adjudicated through a declaratory action. Moreover, to the extent that Westmoreland, Clark v. City of Pascagoula, 507 So.2d 70 (1987) and Hunt v. Preferred Risk Mut. Ins. Co., 568 So.2d 253 (Miss.1990) have been construed as precluding a third party from bringing substantive claims against an insurer in a Rule 57 action, they have been overruled by the Mississippi Supreme Court. State Farm Mut. Automobile Ins. Co. v. Eakins, 96-CT-00034-SCT, ___ So.2d ___, 1999 WL 798573 (¶ 9)(Miss.1998). Thus, Mississippi's longstanding prohibition against litigating a claim against an alleged tortfeasor's liability insurer without first obtaining a judgment against the insured has been limited in the interests of judicial economy; indeed, a separate claim for declaratory judgment, like that filed by Williams, now may be joined with an action for damages. Id. at (¶ 10).
¶ 5. Rule 57 creates a procedure by which the rights and obligations of the parties may be adjudicated in cases involving an actual controversy "that has not yet reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it." M.R.C.P. 57 cmt. "The two principal criteria in favor of rendering declaratory judgments are: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Id.; see also White v. Gautier Utility Dist., 465 So.2d 1003, 1014 (Miss. 1985)("[a]mong the cases where a proceeding for declaratory judgment is most needed are those where there exists an actual dispute with respect to which the parties have a compelling need to know where they stand"). Where, as in the case sub judice, language contained in the insurance contract is thought to need clarification in order to determine the legal positions of the parties, declaratory action is appropriate.
¶ 6. Did Williams, who was not a party to the contracts for insurance between Titan and the District, have standing to seek a declaratory judgment? We believe so. Rule 57(B)(1) provides that:
any person interested under a ... written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected [thereunder] may have determined any question of construction or validity arising under the instrument ..., and obtain a declaration of rights, status, or other legal relations thereunder.
M.R.C.P. 57 (emphasis added). Williams' rights and status clearly are affected by the terms of the policy. Without the coverage afforded the District by its liability policies with Titan, Williams has no recourse against the District since, in 1987, when the cause of action arose, it otherwise enjoyed the protective cloak of sovereign immunity.[1]See, e.g., Richardson v. Rankin County School Dist., 540 So.2d 5, 8 (Miss.1989). Therefore, whether Williams' claim fell within the ambit of either policy had to be determined before his underlying action against the District for damages might proceed. Neither Titan nor the District apparently felt compelled to seek resolution of the issue, so it was incumbent upon Williams to pursue the matter. The chancellor therefore was correct in finding that Williams could petition for an adjudication of his rights pursuant to Rule 57.

II. WHETHER THE LOWER COURT'S EXTENSION OF THE *1024 POLICY'S NOTICE REQUIREMENT IMPERMISSIBLY RE-WROTE THE CONTRACT OF INSURANCE BETWEEN THE DISTRICT AND TITAN, ESSENTIALLY CONVERTING A "CLAIMS MADE" POLICY TO AN OCCURRENCE POLICY.
¶ 7. The chancellor, relying on Lawler v. Government Employees Insurance Company, 569 So.2d 1151 (Miss. 1990), found that Williams had timely provided notice of his claim to the District by filing his lawsuit within the six-year statute of limitations then in effect. While acknowledging that the policy at issue in Lawler was an "occurrence" policy, he stated that there was no reason why the same law would not be applicable to a "claims made" policy. In so finding, the chancellor effectively rewrote the conditions of the contract for insurance between Titan and the District.
¶ 8. Titan Indemnity Policy No. 11-CM-00333 provided the District with liability coverage for claims made between February 4, 1988 and February 4, 1989. The policy contained a 180-day extension period for filing notices of claims, thus extending coverage for claims made through August 2, 1989. A "claims made" policy such as this protects the insured against claims made during the term of the policy, unlike an "occurrence" policy, which protects the policy holder from liability for any act done while the policy is in effect. St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978). In other words, the basic "claims made" policy provides for indemnity, regardless of when the act complained of occurred, if the act was discovered and notice given to the insurer during the policy period. Brander v. Nabors, 443 F.Supp. 764, 767 (N.D.Miss.1978). Conversely, an occurrence policy provides for indemnity, regardless of when the act complained of was discovered or notice provided to the insurer, as long as the act occurred during the policy period. Id.
¶ 9. The District's policy specifically required that written notice of a claim be given before August 2, 1989 as a condition precedent to coverage.[2] In relevant part, the policy provided:
COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY
b. This insurance applies to personal injury only if:
(2) A claim for damages because of personal injury is first made in writing against any insured against the policy:
a. Any claim by a person or organization seeking damages will be deemed to have been made when written notice of such claim is received by any insured or by us, whichever is first;
Williams did not file suit against the District until 1993, more than four years after the end of the policy period. The District was notified on August 23, 1993, that suit would be filed. Prior to that time, there is nothing in the record which can be interpreted as an attempt at compliance with the plain language of the requirement that a claim be made against the District for damages during the policy period or that a written notice of such claim be provided to the District or Titan prior to August 2, 1989. School officials had been alerted only that Williams was the subject of ongoing hazing by other students, which adversely affected his emotional state and performance at school. The record contains a June 29, 1989 letter from Dr. Fred J. McDonnell, Jr., advising school authorities of Williams'"difficulty with his present school situation" and recommending that a special placement program would be advisable. *1025 Additionally, subsequent correspondence indicates that a meeting between Mrs. Williams and school officials took place on September 7, 1989, presumably following at least verbal notification that Williams was experiencing problems of some sort. It is not at all clear, however, when the District was made aware of the specific allegations of sexual abuse at issue. Nevertheless, the insured's awareness of an alleged injury is not enough to constitute a claim. Insurance Corp. of America v. Dillon, Hardamon & Cohen, 725 F.Supp. 1461, 1468 (N.D.Ind.1988)("Awareness is not a demand and the use of the word claim, unless modified by other language, requires that a demand be made.") Instead, a claim for payment is required to invoke coverage. California Union Ins. Co. v. American Diversified Savings Bank, 914 F.2d 1271, 1277 (9th Cir.1990).
¶ 10. Even more to the point, Williams does not claim that anyone acting on his behalf so much as hinted during either the policy period or the extended notice of claim period that a demand for damages might be made against the District. We are mindful that the mere assertion that a wrongful act has occurred does not generally suffice to serve as a claim for damages. California Union, 914 F.2d at 1277. Therefore, the various communications made with the District on Williams' behalf cannot be construed as a claim made against the District during the policy period or even as notice of a claim made therein.
¶ 11. There further is no merit to Williams' assertion that his claim is preserved by the savings clause of Miss.Code Ann. § 15-1-59, which provides that if a person entitled to bring an action is under the disability of infancy or unsoundness of mind at the time the cause of action accrues, the time for bringing a claim is extended until the disability is removed. Williams relies on Lawler v. Government Employees Insurance Company, 569 So.2d 1151 (Miss.1990), for the proposition that § 15-1-59 also extends the time in which a minor may provide notice of a claim. Section 15-1-59 extends only the time during which Williams may bring suit against the District; it should not be construed as also extending or altering the terms of the District's insurance policy with Titan. Moreover, as distinguished from the case subjudice, Lawler involved an "occurrence" policy rather than a "claims made" policy. To suggest that the savings clause is applicable to a "claims made" policy essentially negates the policy's purpose of limiting indemnity to those claims made during a specific policy period and would further serves to convert the "claims made" policy into an "occurrence" policy without regard for the actual contract language.

III. WHETHER THE PROFESSIONAL LIABILITY EXCLUSION IN POLICY NO. 11-CM-00333 IS AMBIGUOUS; AND WHETHER THE EXCLUSION PROHIBITS COVERAGE FOR WILLIAMS' CLAIMS AGAINST THE SCHOOL DISTRICT
¶ 12. Titan further contends that the chancellor erred in finding that the professional services exclusion contained within Policy No.11-CM-00333 was not applicable to Williams' claim. Having found that Titan was not liable to the District under the terms of the policy since no claim was made during the term of the policy, we need not reach the merits of whether coverage was precluded by the professional services liability exclusion. However, we find that the chancellor erred in basing his conclusion about the exclusion on his premise that "[i]t is my opinion that the professional service of a lawyer is lawyering, a doctor doctoring and a teacher teaching and that ambiguous catchall `professional services' should not be expanded to cover supervisory and rule enforcement duties."
¶ 13. In Burton v. Choctaw Co., 730 So.2d 1 (¶ 21)(Miss.1997), the Mississippi Supreme Court noted its previous attempt *1026 to define "professional services" in the liability insurance context as follows:
"[a]lthough this Court has never considered the scope of "professional services" as they pertain to a liability insurance policy, other jurisdictions, in construing such clauses have stated that a "professional service" involves the application of special skill, knowledge and education arising out of a vocation, calling, occupation or employment." Marx v. Hartford Accident & Indemnity Company, 183 Neb. 12, 157 N.W.2d 870 (1968); Maryland Casualty Co. v. Crazy Water Co., 160 S.W.2d 102, 104 (Tex.Civ.App.1942); Robertson v. Maker, 177 So.2d 412, 417 (La.App.1965).
Id. (quoting Shelton v. American Ins. Co., 507 So.2d 894, 896 (Miss.1987)). Whether in the classroom or on the playground, a teacher's specialized skills, knowledge and training encompass not just the academic subject to which he is assigned, but also discipline and supervision. All of these many roles are part of the "professional services" provided by teachers. As the Mississippi Supreme Court pointed out in Burton, "[i]n other cases holding that an exclusionary clause was inapplicable, there have been findings that no professional services were involved." Id. (citing Keepes v. Doctors Convalescent Center, Inc., 89 Ill.App.2d 36, 231 N.E.2d 274 (1967)). In the case sub judice, that cannot be said.

CONCLUSIONS
¶ 14. The chancellor properly found that Williams had standing to seek a Rule 57 declaratory action to determine the rights and obligations of the parties involved. However, in finding that Williams' claim for damages filed against the District and other parties some four years after the expiration of the term of the "claims made" policy served as timely notice, the chancellor improperly redrafted the terms of the insurance contract between the District and Titan, effectively converting it to an "occurrence" policy. While we do not reach the issue of whether the professional services exclusion contained within the "claims made" policy further precluded recovery by the District of any damages for which it was liable to Williams, we note the chancellor erred in finding that a teacher's supervisory and disciplinary responsibilities are not part of the "professional services" provided by members of the teaching profession. Accordingly, we reverse and render the chancellor's decision.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF COPIAH COUNTY IS REVERSED AND JUDGMENT IS RENDERED IN FAVOR OF THE APPELLANT, TITAN INDEMNITY COMPANY. ALL APPEAL COSTS ARE ASSESSED TO THE APPELLEE.
KING, P.J., AND BRIDGES, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McMILLIN, C.J. AND COLEMAN, J.
SOUTHWICK, P.J., CONCURRING.
¶ 16. Since I agree with the determination that there was no coverage under this policy, I also would reverse and render. My disagreement with the approach taken in the trial court is based on that court's following what I believe was an improper procedure, one likely to create and not reduce judicial inefficiency. For this Court to do anything other than reverse and render would only compound the error. Therefore I concur.
¶ 17. What tranpsired procedurally was to turn a dispute between a child as plaintiff and the school district and individuals allegedly responsible for his injuries as defendants, into an independent action by the plaintiffs against an insurance company. There is nothing in this record indicating that any judgment was entered on the underlying claim. Though recent case law has created some rights for plaintiffs to bring suit against an alleged tort-feasor's *1027 insurance company, I find that this suit does not fit within those new rules.
¶ 18. First I will describe what I believe to be the law prior to the decision in State Farm Mutual Automobile Ins. Co. v. Eakins, 96-CT-00034, ___ So.2d ___, 1999 WL 798573 (Miss., Oct. 7, 1999). The supreme court in 1987 considered whether the relatively recently adopted rules of civil procedure had altered the well-established law that an insurance company could not be joined in the action by which a plaintiff also tried to prove the tort liability of the insured. Clark v. City of Pascagoula, 507 So.2d 70, 77 (Miss.1987). The court concluded that Rule 18's provision for liberal joinder of parties was not a sufficient basis to over-ride the traditional bar to mentioning insurance in a tort suit. Id. Later that same year, the court rejected both Rule 18 and also a Rule 57 declaratory judgment action as a proper basis to seek a judgment against the insurer prior to judgment on the tort claim. Westmoreland v. Raper, 511 So.2d 884, 884-85 (Miss.1987).
¶ 19. That principle was altered in Eakins:
From a stand point of judicial economy, appellees should have sought a declaratory judgment on the question of coverage and named State Farm as a party to that action. We announce today that our Rules of Civil Procedure are all encompassing in order to bring a fair and quick resolution to litigation and to allow it to be done economically. Hence an action for declaratory judgment involving multiple claims may be brought against multiple parties, particularly when insurance questions need to be resolved.
Eakins, 96-CT-00034, at (¶ 6), ___ So.2d at ___. The Eakins dissent states that the issue was not briefed, but a majority of the supreme court took the opportunity to resolve it anyway. Id. at (¶ 18), ___ So.2d at ___. I would not interpret the case to mean that insurance coverage determinations should now be the initial litigation and the underlying tort suit should follow as occurred here. To the contrary, the supreme court believed that it was providing an opportunity "for the saving of valuable time and judicial resources." Id. However, there is no saving of time or money nor other efficiency if two suits still occur.
¶ 20. The unstated next step of Eakins, if efficiency is to be encouraged, can only be to make the same fact-finder for the tort claims be the fact-finder for the coverage questions. It is difficult to see how Eakins actually provides any efficiency without such a rule, since otherwise all that it has done is provide an option for which of two suits proceeds first. The court stated this:
Allowing an insured or third party beneficiary and the defendant to resolve insurance coverage questions prior to the trial on the merits is far more fair and economical to all parties than would be to require the trial on the merits and 3 or 4 years later resolve the questions of coverage and payment of a judgment. This, however, does not preclude having insurance coverage questions resolved in a garnishment proceeding. Our pronouncement today will allow both, although it is preferred that they be disposed of initially.
Eakins, at (¶ 8), ___ So.2d at ___. It is unclear if the "defendant" in the first sentence means the alleged tort-feasor or instead means the insurance company. The "insured" is the alleged tort-feasor, who is also the defendant in the underlying tort claim. Perhaps the supreme court meant that either the plaintiff or the defendant in the tort suit can seek coverage issue determinations by bringing in the insurance company defendant. Whoever seeks a determination, the supreme court says that it is preferable that coverage be "disposed of initially." Under the old requirement that the tort suit proceed first, if it ended in a defense verdict that was affirmed on appeal, then the insurance coverage case was never brought. Conversely, if now the *1028 insurance coverage suit results in a defense verdict, the tort claim may still be pursued but with lower expectations. Allowing the coverage claim to go first may actually increase litigation, not reduce it.
¶ 21. Consequently, if Eakins finds its new rule preferable because of judicial economy, there is no economy if the coverage issue is decided first in separate litigation. What occurred in the present litigation is that the plaintiffs brought suit in 1994 against various defendants involved with causing the alleged tort. In 1996 this separate action was brought against the insurance company. There is nothing in the record regarding the disposition of the tort suit. If it is not resolved, then the exact opposite of judicial economy has occurred by the bringing of this declaratory judgment. What started in Eakins as an effort to avoid a "trial on the merits [on the tort claims] and 3 or 4 years later resolve the questions of coverage and payment of a judgment," has become a trial on the merits on the coverage claims and 3 or 4 years later a resolution of the tort claim.
¶ 22. Perhaps the tort suit was settled and this case is in fact solely on the question of whether that judgment can be paid. If so, then Eakins is not necessary for the suit so long as the insured school district assigned its rights under the policy to the plaintiffs. There is no evidence of that, and there is no mention of a judgment for an amount of money. Therefore presumably the tort suit reached some impasse because of coverage questions and the separate action is now proceeding. I do not find that the policy that supports Eakins judicial efficiency and avoiding piece-meal decision of casesis advanced by this separate declaratory judgment action. Whether a trial court holds that there is coverage or not, the losing party can appeal. Depending on what the unsuccessful party determines regarding our decision, a petition for certiorari can be filed. The Eakins' court concern for delay in the over-all resolution of the case has been thwarted.
¶ 23. There is an historical reason for insurance coverage not to be mentioned in tort litigation. I continue to believe that not referring to insurance is the better rule. The central issue even in this litigious age should be the merits of a claim and not the relative painfulness of the payment of a judgment. It is difficult for me to see any reason to mention insurance coverage in the tort litigation other than to assuage jurors if the defendant itself seems overly sympathetic as a person or institution. Yet regardless of that policy point, Eakins serves no purpose whatsoever if it merely changes the order in which cases are tried and appealed. Whether the tort suit is tried first and proceeds through its appeal to be followed by any necessary coverage litigation and its appeals, or whether the first become last and the last first, judicial economy is unaffected.
¶ 24. In my view, the only efficiency possible is if the same arbiters of the law and facts decide both cases in the same proceeding. If factual issues are not involved in one case or the other, then summary judgment can be entered on that part of the case. Yet if Eakins is to remain the law, the two suits need to proceed together in the same action even if because of the nature of the issues not all are tried in front of a jury. Then the appeals of the different suits will also be together.
¶ 25. My objection to what appears in the record before us is that Eakins has not been satisfied. If the tort claims are in fact no longer disputed, that does not appear in the record. If they are, then this declaratory judgment should not have proceeded independently while the tort suit awaits its conclusion.
¶ 26. I disagree with Eakins. There are many considerations in litigation. I find that the traditional prohibition on insurance matters being injected into the tort suit itself to be a better balance of those competing considerations. Yet to the extent *1029 Eakins' goal is allowing parties under Rule 18 to receive all the relief to which they are entitled in one proceeding regardless of other factors, this case fails of that purpose.
¶ 27. However, since I also agree that there is no coverage in this case, I would not in the name of economy and efficiency require that more litigation occur. I concur in the result.
McMILLIN, C.J. AND COLEMAN, J., JOIN THIS SEPARATE OPINION.
NOTES
[1] Although districts were permitted to purchase liability insurance, the authorizing statute did not at that time provide for an express waiver of immunity upon such action. Miss. Code Ann. § 37-7-319(1)(1972).
[2] Mississippi law recognizes that the notice provisions contained within these policies represent valid conditions precedent to coverage, rather than a contractual attempt to vary the statute of limitations warned against in Lawler. Brander, 443 F.Supp. at 771-771 (citing Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445 (1932); Cox v. Lamar Life Ins. Co., 208 Miss. 146, 43 So.2d 884 (1950)).