754 So.2d 545 (2000)
AMERICAN CABLE CORPORATION, Appellant,
v.
TRILOGY COMMUNICATIONS, INC., Appellee.
No. 97-CA-00080-COA.
Court of Appeals of Mississippi.
January 11, 2000.
Certiorari Denied June 1, 2000.
*548 Donald W. Boykin, Jackson, Attorney for Appellant.
Charles Wilbanks, Jr., Todd Inman Woods, T. Calvin Wells, Jackson, Attorneys for Appellee.
EN BANC:

MODIFIED OPINION ON MOTION FOR REHEARING
SOUTHWICK, P.J., for the Court:
¶ 1. The motion for rehearing is granted. The previous opinion of this court is withdrawn and the following substituted. The Rankin County Circuit Court denied American Cable Corporation's motion to set aside a default judgment entered in favor of Trilogy Communications. On appeal, American Cable argues that there was no personal jurisdiction and that the circuit judge abused his discretion in failing to find grounds for setting aside the default. We agree that the default judgment should have been set aside. Consequently, we reverse and remand for further proceedings.

FACTS
¶ 2. Trilogy Communications, Inc. is a Delaware corporation qualified to do business in Mississippi. Sometime in December of 1993, Trilogy was contacted by American Cable Corporation, a Florida corporation not qualified to do business in Mississippi. American Cable sought to open a line of credit for $50,000 in order to purchase communications materials. After reviewing American Cable's balance sheet and trade references, Trilogy extended the line of credit.
¶ 3. Both parties agree that on February 3, 1994, Richard Zorin, American Cable's vice-president, ordered $16,000 worth of communications materials via telephone. American Cable disputes this claim to the extent of saying it needs to be provided Trilogy's records before being certain of what orders were placed. Trilogy asserted that also on February 3, American Cable placed an additional order for $10,000. All of these materials were to be shipped to American Cable's work site in Alabama. Trilogy asserts that Mr. Zorin again ordered materials from Trilogy by way of a telephone call on February 17, 1994. The materials ordered totaled approximately $55,000. American Cable contends that a substantial portion of these materials, perhaps all but the first order, may have been ordered by another corporation and thus it is not responsible for the entire amount for which it has been billed.
¶ 4. In 1994, American Cable made payments of $4,000 toward its account balance. There is nothing in the record regarding whether Trilogy disputed any part of the total balance prior to the default judgment, but neither is there evidence that Trilogy had been sending periodic bills for the entire amount. On March 1, 1995, Trilogy sent American Cable a certified letter demanding $76,708.78, the balance due on its account. There apparently was no response *549 to this letter and specifically no complaint that the demand included charges for items that had not been purchased.
¶ 5. Trilogy filed suit against American Cable in the Rankin County Circuit Court on June 7, 1995. Richard Zorin was physically served with process by the deputy sheriff of Pinellas County, Florida on October 31, 1995. American Cable failed to file an answer or otherwise defend the suit. Consequently, Trilogy's motion for default judgment against American Cable was granted on December 29, 1995. The trial judge awarded Trilogy the balance due on the account, interest, and $5,000 in attorneys' fees.
¶ 6. The attorney for American Cable filed his notice of appearance in the suit on January 12, 1996. Almost one month later, American Cable filed its motion to set aside the entry of default and the default judgment. Following a hearing, the trial judge entered an order on December 11, 1996, denying the motion. It is from this order that American Cable appeals.

DISCUSSION

I. Personal jurisdiction
¶ 7. An appellate court reviews jurisdictional issues de novo by examining the facts set out in the pleadings and exhibits to determine the propriety of the proceedings. Sorrells v. R & R Custom Coach Works, Inc., 636 So.2d 668, 670 (Miss.1994). Here we first consider American Cable's contention that the Rankin County Circuit Court lacked personal jurisdiction over it. A court that lacks personal jurisdiction over a defendant cannot enter a valid judgment against that defendant. Hamm v. Hall, 693 So.2d 906, 910 (Miss.1997). If a judgment or order is void, it should be set aside. M.R.C.P. 60(b)(4) The grant or denial of a Rule 60(b) motion is generally within the discretion of the trial court. However, if the judgment is found to be void the only proper decision is to set the judgment aside. Sartain v. White, 588 So.2d 204, 211(Miss.1991).

A. Long-arm statute
¶ 8. Mississippi's long-arm statute allows exercise of personal jurisdiction over a nonresident corporation if, among other situations, the nonresident made a contract with a Mississippi resident to be performed in whole or in part in this state. Miss.Code Ann. § 13-3-57 (Supp.1998). If such a contract was entered, then the nonresident will be subject to jurisdiction of Mississippi courts, provided that the exercise of jurisdiction is consistent with due process. Sorrells, 636 So.2d at 671.
¶ 9. American Cable is a non-resident corporation that entered an oral agreement with Trilogy whereby Trilogy was to provide communications materials for use at American Cable's Alabama work sites. Of the three orders that Trilogy alleges it receivedtwo on February 3, 1994 and another on February 17American Cable contends that though it definitely placed one order, the remainder may have been ordered by another company that it is now suing in a Tennessee court.
¶ 10. The parties' agreement that an oral contract existed for goods to be manufactured in Mississippi for sale to the defendant is sufficient to support a finding that there was a contract to be performed in part in Mississippi. Murray v. Huggers Manufacturing, Inc., 398 So.2d 1323, 1324 (Miss.1981). American Cable is therefore amenable to suit under the long-arm statute.

B. Due Process
¶ 11. Even though a provision of the long-arm statute is satisfied, we must also determine whether the exercise of jurisdiction here is consistent with constitutional due process. The United States Supreme Court has established the fundamental guidance that we are to follow. A defendant must have minimum contacts with the forum state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial *550 justice." Cappaert v. Walker, Bordelon, Hamlin, Theriot, and Hardy, 680 So.2d 831, 834 (Miss.1996), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The defendant's conduct relating to the forum state must have been sufficient to create a reasonable expectation that he could be brought into that state's courts. Cappaert, 680 So.2d at 834-35, citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559 (1980). Though the two standards have some overlap, we consider them separately.

1. Minimum contacts
¶ 12. The concept of "minimum contacts" can be further divided into contacts that create specific personal jurisdiction and those that lead to general personal jurisdiction. Allred v. Moore & Peterson, 117 F.3d 278, 286 (5th Cir. 1997). Jurisdiction is labeled "specific" when the nonresident defendant's contacts with the forum state are directly related to the cause of action. "General jurisdiction" will exist even without this direct relationship to the cause of action, if the defendant's contacts with the forum state are continuous and systematic. Mississippi Interstate Express, Inc. v. Transpo, Inc., 681 F.2d 1003, 1007 (5th Cir.1982), citing Helicopteros Nacionales de Colombia, SA v. Hall, 466 U.S. 408, 413-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). American Cable's contacts with Mississippi were neither systematic nor continuous. They therefore are insufficient to support an exercise of general jurisdiction. If jurisdiction exists it is founded on the contacts arising out of American Cable's contract with Trilogy, i.e., "specific jurisdiction."
¶ 13. Among the factors considered by courts in determining whether specific jurisdiction exists is whether the defendant or the plaintiff initiated the contacts with the forum state. Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1031 (5th Cir.1983). It was American Cable who contacted Trilogy and requested a credit line of $50,000. American Cable then submitted a balance sheet to Trilogy along with a two-page trade reference sheet. Though the distinction of "who started it" may appear minor, in fact this shows that the nonresident buyer reached out beyond its Florida home and itself initiated negotiations with a foreign corporation in Mississippi.
¶ 14. There is some dispute in the present case as to the number of contacts, though we know that American Cable submitted its balance sheet and trade references to Trilogy. On at least one more occasion, American Cable contacted Trilogy and placed an order for cable materials. The delivery receipt for those materials was signed by the defendant's president, Richard Zorin. While a single contact can be a sufficient basis upon which to predicate specific jurisdiction, that single contact must be "purposeful," and directed at the forum. Id. at 1028. Again, since American Cable in Florida initiated contact with a corporation in Mississippi, this action showed purpose.
¶ 15. In addition, the three invoices sent by Trilogy to American Cable contained the following clause
IN ACCEPTING THESE GOODS, PURCHASER AGREES THAT THIS TRANSACTION WILL BE GOVERNED BY THE LAW OF THE STATE OF MS, AND AGREES TO JURISDICTION AND VENUE IN THE COURTS OF MS.
American Cable acknowledges receiving the invoices, but we do not know when this occurred. Trilogy contends that an invoice was sent with each shipment of goods. Accepting that as true, American Cable received at least one invoice on February 10, 1994, as a delivery receipt bearing that date was signed by Richard Zorin, vicepresident of American Cable.
¶ 16. There is no evidence that the original understanding between American Cable and Trilogy addressed venue or choice of law. Therefore, the provision in *551 the invoices constituted an additional term. A section of the commercial code establishes the rules for when a new term proposed by one party becomes binding on the other. Miss.Code Ann. § 75-2-207(1972). The statute "applies to the situation in which an agreement has been previously reached either orally or by informal writings, and one or both parties send written confirmation of terms discussed, adding certain terms not discussed." Mid-South Packers, Inc. v. Shoney's, Inc., 761 F.2d 1117, 1123 (5th Cir. 1985). As between merchants, those additional terms become part of the contract unless "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." Miss.Code Ann. § 75-2-207(2).
¶ 17. An invoice which adds terms to the contract can constitute a written confirmation of an oral contract. Mid-South Packers, 761 F.2d at 1123. The supreme court held that the additional terms became part of the contract, obligating Shoney's to pay interest and reasonable collection costs, including attorney's fees, as provided in the invoices. Id. at 1124. A written confirmation also satisfies the statute of frauds if it is sufficient against the sender and the party receiving it has reason to know of its contents but fails to object in writing to its contents within ten days after it is received. Miss. Code Ann. § 75-2-201(2) (1972). No objection to these invoice terms was ever lodged.
¶ 18. It is true that the delivery receipt for the third transaction is not in the record. Trilogy asserts there were signed delivery receipts for all, but makes no explanation as to why the third one was not produced. That was something that could have been more thoroughly explored had American Cable responded in a timely fashion to the lawsuit. A valid default judgment does not require that all issues be as thoroughly explored as they might have been at trial. That is hardly possible because of the default, leaving no one present to argue the defense side. What is necessary is that enough is presented factually and legally to justify a judgment. These invoices could properly be considered part of the justification. Admittedly the invoices were a less formal means of creating a choice of law provision than was the case in many of the precedents, and the third invoice does not appear in the record. However, that does not make the provision meaningless. See First Miss. Corp. v. Thunderbird Energy, Inc., 876 F.Supp. 840, 844 (S.D.Miss.1995). The invoices perhaps were insufficient without more to satisfy due process concerns. They are a factor in favor of finding jurisdiction.
¶ 19. Although no representative of American Cable ever traveled to Mississippi, specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil. What we review is whether the defendant purposefully conducted activities in the forum state. Did the defendant consciously seek the benefits offered by the forum state's resident company and incidentally receive the burden of that state's laws? Mason v. Shelby County Health Care Corp., 919 F.Supp. 235, 238 (S.D.Miss. 1996). It is the purposefulness of the decision that is important and not the physical presence of the defendant in the state. Also relevant, though less important than some other factors, is that American Cable agreed to mail payment checks into the forum state. Command-Aire Corp. v. Ontario Mechanical Sales and Serv. Inc., 963 F.2d 90, 94 (5th Cir.1992). Payments totaling $4,000 were received by Trilogy in Mississippi.
¶ 20. What we find to be an accurate and quite relevant statement of the guiding principle is this "when a nonresident defendant takes purposeful and affirmative action, the effect of which is to *552 cause business activity, foreseeable by the defendant in the forum state, such action by the defendant is considered a minimum contact for jurisdictional purposes." Mississippi Interstate Express, Inc. v. Transpo, Inc., 681 F.2d 1003, 1007 (5th Cir.1982). The court has continued to find the initiation of the contact by the defendant to be of considerable importance. Command-Aire Corp. v. Ontario Mechanical Sales and Serv. Inc., 963 F.2d 90, 94-95 (5th Cir.1992).
¶ 21. Based on all these considerations, it was reasonable for American Cable to expect that seeking an agreement with this out-of-state company might cause suit to be brought in that company's home forum. American Cable had minimum contacts sufficient for suit in Mississippi.

2. Traditional notions of fair play and substantial justice
¶ 22. If a nonresident defendant has sufficient minimum contacts with the forum, the "fairness" factor of the jurisdictional inquiry must be examined. Asahi Metal Indus. Co., Ltd. v. Superior Court of Calif., 480 U.S. 102, 105, 107 S.Ct. 1026 (1987). The Supreme Court has stated that the "fairness" of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including the burden upon the nonresident defendant, the interests of the forum state, the plaintiffs interest in securing relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. World-Wide Volkswagen Corp., 444 U.S. at 292, 100 S.Ct. 559.
¶ 23. The burden upon American Cable does not appear substantial, as it is not a great distance from Florida to Mississippi. Moreover, it does not appear that the majority of the witnesses are located in Florida. Just as Trilogy has an interest in receiving payment for its goods, Mississippi certainly has an interest in providing a means of redress for American Cable's failure to pay. Although the Mississippi forum is less convenient for American Cable than a Florida one, traditional notions of fair play and substantial justice are not infringed.

II. Denial of Rule 60(b) motion
¶ 24. Having determined that the Rankin County Circuit Court did have personal jurisdiction over American Cable and thus that the default judgment was not void, we next consider whether the circuit court erred in failing to set the judgment aside on other grounds. Default judgments are not favored and relief should only be granted when proper grounds are shown. The determination whether to vacate such a judgment is addressed to the discretion of the trial court. While the trial court has considerable discretion, this discretion is neither "unfettered" nor is it "boundless." Chassaniol v. Bank of Kilmichael, 626 So.2d 127, 135 (Miss.1993).
¶ 25. In deciding whether the trial court abused its discretion in failing to set aside a default judgment entered against a former husband for past-due support, the supreme court explained that:
When we say that the trial court has discretion in a matter, we imply that there is a limited right to be wrong. At the very least the statement imports a view that there are at least two different decisions that the trial court could have made each of which on appeal must be affirmed. Indeed, if there are not at least two possible affirmable decisions, by definition the trial court is without discretion. When we review on appeal the decision of a trial court within the discretion vested in it, we ask first if the court below applied the correct legal standard. If so, we then consider whether the decision was one of those several reasonable ones which could have been made.
Burkett v. Burkett, 537 So.2d 443, 446 (Miss.1989).
*553 ¶ 26. The Supreme Court has articulated a three-pronged balancing test which the trial court should use in determining whether to grant relief from judgment under M.R.C.P. 60(b). The court must consider: (1) the nature and legitimacy of the defendant's reasons for his default, i.e., whether the defendant has good cause for default, (2) whether the defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default is set aside. Chassaniol, 626 So.2d at 134.

A. Good cause
¶ 27. American Cable contends that it had good cause for the default and points to the affidavit of Barbara Zorin, president of American Cable. Mrs. Zorin states that after receiving the summons and complaint on October 31, 1995, she forwarded both documents to American Cable's attorney in Nashville, Tennessee on November 2. American Cable asserts that it thereafter "assumed that the attorney in Nashville was representing [it] concerning the Trilogy lawsuit." American Cable attempted to contact its attorney on December 21 but was unable to reach him until January 1, 1996. The attorney then advised American Cable that it should obtain Mississippi counsel. After unsuccessfully attempting to retain two Mississippi attorneys, American Cable finally obtained local counsel on January 11, approximately two weeks after entry of the default judgment.
¶ 28. Similar reasons have been rejected by the supreme court. The court refused to set aside a default judgment where the defendant forwarded the summons and complaint to its insurer but failed to pursue the matter further. H & W Transfer And Cartage Serv., Inc. v. Griffin, 511 So.2d 895, 899 (Miss.1987). Five months after sending the insurance company the litigation documents, it discovered a default judgment had been entered. The defendant's insurer behaved in similar fashion and simply mailed the suit papers to an attorney listed in its approved attorneys books. Id.
¶ 29. In another case, the defendant forwarded the suit information to his insurance company "and heard nothing else of the lawsuit until default judgment entered against him." Pointer v. Huffman, 509 So.2d 870, 876 (Miss.1987). The defendant argued that his failure to answer was unintentional and was a reasonable reliance on the insurance company to protect its rights. Id. The supreme court upheld the default because the defendant's failure to take follow-up action to determine whether the papers were received or whether an answer to the complaint had been filed was not good cause. Id.
¶ 30. Finally, the supreme court refused to set aside a default judgment where the defendant failed to file an answer due to a misunderstanding with his attorney. Bailey v. Georgia Cotton Goods Co., 543 So.2d 180, 182 (Miss.1989). The defendant discovered that his attorney had not filed an answer on the last day for filing a response or one day thereafter. Because of a business trip, the defendant failed to take care of the matter and, consequently, a default judgment was entered against him. Id. The supreme court found the defendant's excuse inadequate, noting that "the fact that Bailey was an experienced businessman who had been involved in a number of lawsuits certainly militates in favor of our giving deference to the trial court's ruling on this point." Id. Though the court noted that "[i]t certainly would not have been an abuse of discretion for the Circuit Court to give a defendant the benefit of the doubt where the default was entered only three days after the legal deadline for filing an answer," it nevertheless affirmed. Id.
¶ 31. The reasons given by American Cable for its failure to answer are similar to those that have been previously been found not to support granting a motion to set aside a default. The sole follow-up inquiry that American Cable contends it made occurred nearly two months after it forwarded the complaint to its attorney *554 and several days before entry of the default judgment. Simply assuming that its Tennessee attorney was handling the matter is not "good cause."

B. Colorable defense
¶ 32. Next, we consider whether American Cable has a colorable defense to the merits of the claim. If any one of the three factors in the balancing test outweighs the other in importance, it is this one. Bailey, 543 So.2d at 182.
¶ 33. The affidavit of Frances Mitchell, credit manager at Trilogy, established that on February 3, 1994, Richard Zorin ordered approximately $16,000 worth of materials. Later that same day, this affidavit states that American Cable placed an additional order for materials totaling $10,000. All of these materials were to be shipped to work sites in Alabama. The Trilogy affidavit also asserted that Richard Zorin placed a third order on February 17, for $55,000 in materials. Trilogy contends that American Cable never informed it that the goods were not properly delivered or about the possible involvement of another corporation.
¶ 34. American Cable's president, Barbara Zorin, stated that the company informed Trilogy that "the goods may have been ordered and received by ACI Management and not American Cable Corporation." Zorin goes on to attest that "ACC has a meritorious defense to this lawsuit in that ACC contends that a substantial portion of the goods for which Trilogy is seeking payment were ordered by some entity other than ACC, and it is ACC's belief, that those goods were in fact ordered by ACI Management. While some of the goods may have been ordered by ACC, ACC questions the amount charged for these goods." American Cable is apparently involved in litigation with ACI in Tennessee.
¶ 35. To show a creditable defense in the present setting, a party must show facts, not conclusions, and must do so by affidavit or other sworn form of evidence. Rush v. North American Van Lines, Inc., 608 So.2d 1205, 1210 (Miss. 1992). An unsubstantiated allegation that a meritorious defense exists is insufficient as a matter of law to sustain the burden under Rule 60(b). Pease v. Pakhoed Corp., 980 F.2d 995, 1000 (5th Cir.1993). We interpreted American Cable's affidavit as not being a categorical denial that it ordered the materials from Trilogy. Rather, it contends that the other company may have placed some of the orders and somehow had American Cable billed for them.
¶ 36. On rehearing, American Cable argues that we have read the affidavit in too crabbed a fashion. Specifically, when Zorin alleged in her affidavit that another company in Tennessee "may have" ordered the goods, we should not have read that to be any qualification to Zorin's later denial in the same affidavit that American Cable had not ordered the second and third shipments. The initial part of the affidavit never denies that the goods were ordered, questions whether another specific company may have ordered some, and discussed American Cable's efforts to find out more about the shipments. That is not a denial at all, much less a categorical one. The summary paragraph at the end of the affidavit states affirmatively that an entity other than itself ordered some of the goods, without being certain which other company. Reading the affidavit as a whole, we agree that there is a denial of responsibility for two of the shipments.
¶ 37. What has been given as a definition of a "colorable" or "meritorious" defense under this Rule is whether it is "good at law so as to give the fact-finder some determination to make." Bieganek v. Taylor, 801 F.2d 879, 882 (7th Cir.1986). Had American Cable at trial only said that it was not sure if it had ordered all the goods, that is not a defense that creates a fact question. The plaintiff still would have to present evidence sufficient to prove its case and the defense does nothing more than require the fact-finder to *555 decide based solely on the plaintiff's evidence. That is not a "colorable defense" under this analysis.
¶ 38. We agree though that American Cable stated more than its uncertainty about the shipments. A colorable defense was raised.

C. Prejudice to Trilogy
¶ 39. Trilogy contends that it would be prejudiced if the default judgment against American Cable were set aside. It explains that almost one year elapsed between entry of the default judgment and the trial court's denial of the motion to set aside the judgment. Trilogy relies upon a case in which the supreme court held a delay of over one year was too long. However, that case involved a motor vehicle, prompting the supreme court to note that
Plaintiff Pittman may well have suffered substantial prejudice from the granting of the motion to vacate. That motion was not filed until June 25, 1985, and the Circuit Court was not able to rule thereon until January 10, 1986. Even if the judgment had been vacated at that time and Pittman given the earliest possible trial setting, the trial would still have occurred more than one year following the original February 6, 1985, setting. It requires no great insight to know that a year's postponement of a trial which will turn on witnesses' memories regarding a split second eventa motor vehicle accidentwill often substantially prejudice one or both of the parties in terms of the common human phenomenon of loss of memory of specific events over time, not to mention the fact that the injured plaintiff is without a resolution to her claim for that period of time.
Guaranty Nat'l Ins. Co. v. Pittman, 501 So.2d 377, 388 (Miss.1987).
¶ 40. In the present case, the motion to set aside the default judgment was filed on February 9, 1996, a little over one month after the circuit judge granted the default judgment. The judge did not rule on the motion until December 29 that same year. The fairly prompt bringing of the motion to set aside indicates that American Cable did not cause much delay in providing an opportunity for relief from the judgment. We find that to the extent memories may be growing dim, that was not the result of American Cable's delay but was the required procedural delay for the trial and appellate courts to reach a final resolution of the motion. Even so, just as prejudice from delay is not sufficient in itself to require denial of a motion to set aside a default judgment, neither does the absence of prejudice by itself suggest that failure to set aside was an abuse of discretion. Bailey, 543 So.2d 180, 183; Federal Savings and Loan Insur. Corp. v. Kroenke, 858 F.2d 1067, 1070 (5th Cir.1988).
¶ 41. This review reveals that only one of the three factors that the trial court was to apply to its decision on the motion to set aside the default, actually favors the court's denial of the motion. The "most important" factor, whether a colorable defense has been asserted, we have agreed on rehearing does not support the upholding of the default. The fact that the defense may ultimately be proven incorrect is not a consideration at this point in litigation.
¶ 42. We do not know the trial court's findings as to these three factors, as his order merely found the motion to be unmeritorious. We will not assume that the trial court erred in its analysis of the factors, but instead in the absence of findings we assume that he reached the correct result on each of them. Century 21 Deep South Properties, Ltd. v. Corson, 612 So.2d 359, 367 (Miss.1992). The fact that on rehearing we have changed our conclusion on one of the factors does not change the presumption of acceptable findings by the trial court. The error being acknowledged here is our own, starting with the writing judge. We do not assume that the trial court made the same error.
*556 ¶ 43. Does the fact that no valid reason exists for failing to respond to the litigation by itself justify the manner in which the trial court's discretion was exercised? The supreme court has made this relevant statement: "upon a showing by the defendant that he has a meritorious defense, we would encourage trial judges to set aside default judgments in a case where, as here, no prejudice would result to the plaintiff. The importance of litigants having a trial on the merits should always be a serious consideration by a trial judge in such matters." Bryant, Inc. v. Walters, 493 So.2d 933, 937 n. 3 (Miss.1986). After quoting this encouragement in a later case, the court even stated that "any error made by a trial judge should be in the direction of setting aside a default judgment and proceeding with trial...." Clark v. City of Pascagoula, 507 So.2d 70, 76 (Miss. 1987).
¶ 44. We follow the supreme court's directives in this as in other appeals, and add that the discretion of the trial court is not "unfettered" when considering whether to set aside a default. Burkett, 537 So.2d at 445. Here there was a delay, even possibly a lack of zeal, by an out-of-state defendant in making certain that it had timely acquired a Mississippi attorney to protect its interests. There was not, however, on this record a failure to take some steps in responding to the litigation. The actions, though negligent, were not frivolous. The procedural missteps by American Cable, which are grounds for finding the first factor in the default analysis against them, are not sufficient by themselves to permit the upholding of the trial court's denial of the motion to set aside the default.
¶ 45. We grant rehearing, reverse the judgment, and remand for further proceedings.
¶ 46. Our setting aside the default on appeal is the procedural equivalent of the trial court's having initially done so. This case starts anew with the requirement of the plaintiff to prove any contested factual underpinnings of its position regarding jurisdiction as well as the merits. What we have said regarding the legal analysis of the jurisdictional issues will be the law of this case unless altered by the supreme court. Our analysis was based on the record before us, which was sparse because of the granting of a default. This analysis should be considered by the trial court on remand but in light of whatever evidence the parties present.
¶ 47. THE JUDGMENT CIRCUIT COURT IS REVERSED AND THE CAUSE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
DIAZ, J., NOT PARTICIPATING.