57 So.3d 648 (2010)
J. Clifford HARRISON as Trustee ("Harrison") and Regions Bank f/k/a AmSouth Bank and Successor in Interest to Deposit Guaranty National Bank ("Bank"), Appellants
v.
MISSISSIPPI TRANSPORTATION COMMISSION, Appellee.
No. 2008-CA-02067-COA.
Court of Appeals of Mississippi.
February 23, 2010.
Rehearing Denied July 20, 2010.
*649 Jeffrey Dale Rawlings, Jon Jerdone Mims, Madison, attorneys for appellants.
James T. Metz, attorney for appellee.
Before MYERS, P.J., IRVING and GRIFFIS, JJ.
GRIFFIS, J., for the Court:
¶ 1. J. Clifford Harrison, as trustee, and Regions Bank f/k/a AmSouth Bank ("the Bank"), as successor in interest to Deposit Guaranty National Bank,[1] appeal the judgment of the Webster County Special Court of Eminent Domain in favor of the Mississippi Transportation Commission ("MTC") in the amount of $42,950. The Appellants claim that: (1) the trial court abused its discretion in denying the Appellants' motion to amend judgment or, alternatively, for relief from judgment because the Appellants were not parties to the removal of funds deposited by the MTC and were not properly notified of the trial; (2) the trial court lacked authority to enter a money judgment against them under the eminent domain quick-take provision; and (3) the trial court's judgment is in violation of Rules 8 and 54 of the Mississippi Rules of Civil Procedure. We agree that the trial court abused its discretion in denying the Appellants' motion to amend judgment or, alternatively, for relief from judgment. Therefore, the judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

FACTS
¶ 2. On October 20, 1998, the MTC filed a complaint for eminent domain proceedings to acquire 1.45 acres of land in Webster County, Mississippi for the purpose of expanding a portion of U.S. Highway 82.[2] As the owner of the property, Sherry Mann ("Sherry") was named as a defendant. The Appellants were named as defendants as the beneficiary and trustee under certain deeds of trust which secured Sherry's indebtedness to the Bank.
¶ 3. A statement of value was filed with the complaint in which the MTC's appraiser estimated just compensation for the taking to be $14,450. Accordingly, the MTC deposited $14,450 with the trial court. The trial court then granted the MTC the right of immediate title and possession of the property.
¶ 4. Pursuant to Mississippi Code Annotated section 11-27-83 (Rev.2004), the trial court appointed a disinterested appraiser, Andy Johnson, Jr., to determine just compensation. *650 Johnson determined that the total compensation due to the owner was $57,400. The trial court entered an amended order granting the MTC the right of immediate title and possession upon the MTC's deposit of the difference between $57,400 and the $14,450 already deposited with the trial court. The MTC complied with this order and deposited a total of $57,400 which was then released to the named defendantsSherry, Harrison, and the Bank.
¶ 5. The check from the trial court was made out to "Sherry Belinda Mann a/k/a Sherry Mann, Ben F. Hilbun, Jr., Atty., Deposit Guaranty National Bank, Beneficiary, J.L. Clifford Harrison, Trustee." The clerk's docket shows that the check was delivered to Ben Hilbun, attorney for Sherry. The back of the check was endorsed by Hilbun and Sherry. Below their signatures is a stamp with the following: "Deposit Guaranty National Bank, Post Office Drawer 919, Eupora, Mississippi XXXXX-XXXX." Below the stamp is an illegible signature and the notation: "Personal Banker, applied to ILS # XXXXXXXXXX." Apparently, the funds were applied to Sherry's mortgage loan held by the Bank.
¶ 6. Thereafter, the MTC discovered that Sherry had conveyed the property to her mother, Peggy Mann ("Peggy"), by warranty deed. The MTC then amended the complaint to include the new landownersPeggy and her husband, Wayne Mann. An agreed order of continuance of the trial was entered on May 7, 2002. This order was signed by counsel for the MTC and counsel for the Manns; however, the Appellants did not approve this order. Trial was set for February 17, 2004. Although the MTC's notice of trial date was mailed to the Appellants, it was not served on the Appellants' attorney of record.
¶ 7. A second agreed order of continuance was entered on June 15, 2004, again signed only by counsel for the MTC and counsel for the Manns. The MTC filed a motion for trial setting on February 15, 2007. The Appellants were not served with this motion. On September 7, 2007, the trial court entered an order setting trial for June 17, 2008.
¶ 8. The jury found that the defendants in the eminent domain actionSherry, Peggy, Wayne, the Bank, and Harrison were owed $14,450 as just compensation for the taking. Mississippi Code Annotated section 11-27-87 (Rev.2004), titled "Effect of insufficiency or excess of deposit," states, in pertinent part, that:
If the plaintiff takes title to and possession of the land condemned pursuant to the order of the court and the amount of the compensation as determined upon final disposition of the case is less than the amount of the deposit, the plaintiff shall be entitled to a personal judgment against the owner for the amount of the difference.
Accordingly, the trial court entered a judgment against the defendants and in favor of the MTC in the amount of $42,950the difference between the MTC's deposit of $57,400 and the jury's award of $14,450.
¶ 9. The Appellants filed a motion to amend judgment or, alternatively, for relief from judgment claiming that they should be removed as judgment debtors or, alternatively, that they are entitled to relief from the judgment since they were not party to the withdrawal of the funds deposited by the MTC. The trial court denied the motion and found that the Appellants were proper parties to the action and chose not to appear and defend their interests at the trial conducted on June 17, 2008. The trial court further noted that the back of the check was endorsed by the *651 Bank; thus, the Appellants were parties to the removal of funds.
¶ 10. The trial court entered an order reopening the time for appeal, and the Appellants properly filed their notice of appeal.

STANDARD OF REVIEW
¶ 11. "The grant or denial of a Rule 59 motion is within the discretion of the judge[,] and we will not reverse the denial absent an abuse of discretion or if allowing the judgment to stand would result in a miscarriage of justice." Journeay v. Berry, 953 So.2d 1145, 1160 (¶ 51) (Miss. Ct.App.2007) (citing Clark v. Columbus & Greenville Ry. Co., 473 So.2d 947, 950 (Miss.1985)). The grant or denial of a Rule 60(b) motion is also reviewed under an abuse-of-discretion standard. Tel. Man, Inc. v. Hinds County, 791 So.2d 208, 210 (¶ 9) (Miss.2001) (citation omitted).

ANALYSIS

Whether the judgment against the Appellants was in error because the Appellants were not parties to the removal of funds deposited by the MTC and were not properly notified of the trial.
¶ 12. The Appellants claim that their request for relief from judgment under Rules 59(e) and 60(b)(6) of the Mississippi Rules of Civil Procedure was improperly denied by the trial court because they were not a party to the removal of funds deposited by the MTC. Further, the Appellants also claim that they were not properly notified of the trial date.
¶ 13. "M.R.C.P. 59(e) provides for a motion to alter or amend a judgment. In order to succeed on a Rule 59(e) motion, the movant must show: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent manifest injustice." Journeay, 953 So.2d at 1160 (¶ 51) (citing Brooks v. Roberts, 882 So.2d 229, 233 (¶ 15) (Miss.2004)). The Appellants argue that to hold them liable as judgment debtors in this matter results in manifest injustice.
¶ 14. Furthermore, Rule 60(b)(6) allows the trial court to relieve a party from a final judgment for "any reason justifying relief from the judgment." The Appellants contend that sufficient evidence exists to show that the judgment is prejudicial, unconscionable, and unfair. We agree that the trial court should have either amended the judgment to remove the Appellants as judgment debtors or, alternatively, granted the Appellants relief from the judgment.
¶ 15. We first consider whether the Appellants were parties to the removal of the funds. The clerk's docket record shows that the check was delivered to Hilbun, Sherry's attorney. Sherry and Hilbun both endorsed the check and then presented it to a teller at the Bank. Sherry had the check applied toward her mortgage loan held by the Bank.[3] Harrison, the trustee, did not endorse the check. The only evidence that the Bank endorsed the check is the stamp placed on the check. The Bank claims that such stamp is insufficient to constitute an endorsement by the Bank so as to make the Bank a party to the removal of funds.
*652 ¶ 16. Because the check was ambiguous as to whether the parties were paid jointly or alternatively, i.e., there was no "and" or "or" language on the payee line of the check, Mississippi Code Annotated section 75-3-110(d) (Rev.2002) provides that the check is payable to the parties alternatively and may be negotiated by any of the parties in possession of the check.[4] Thus, the Appellants' endorsements were not required for Sherry to negotiate the check.
¶ 17. It is clear, as the MTC argues, that the MTC is entitled to a judgment in the amount of their excess deposit. However, to hold the Appellants responsible for that judgmentalmost ten years after the money was disbursed to the landowner and applied to the landowner's mortgageconstitutes manifest injustice. The Bank was a nominal party to this case as a lien holder, and the Bank's lien had long since been satisfied by the time this judgment was entered. Sherry, as the landowner, benefitted from the disbursement of funds that were applied to reduce her mortgage on the land. To now hold the Appellants liable for repayment of those fundswhen Sherry's loan with the Bank has been satisfied and the Bank no longer has any claim against herresults in a significant windfall to Sherry and constitutes a patently unfair result for the Appellants.
¶ 18. The trial court held that the stamp constituted the Bank's endorsement and made the Bank a party to the removal of funds. However, the stamp was placed on the check only because Sherry presented the check to the Bank to be applied to her mortgage loan. It was an abuse of discretion for the trial court to hold that this action by Sherry made the Bank a party to the removal of funds.
¶ 19. We next consider the trial court's finding that the Appellants failed to appear and defend their interests at trial. Many pleadings in this matter regarding the trial date were not served on the Appellants' attorney of record. Although the Bank admits it was aware of the trial date, it submitted an affidavit from its attorney stating that he called Josh Freeman, attorney for the MTC, the day before trial. He informed Freeman that the Bank's lien had been paid in full and that he would not attend the trial because the Bank no longer had an interest in the property. Freeman agreed and never indicated that the MTC would seek to collect the judgment from the Bank. This conversation is not disputed by the MTC.
¶ 20. The MTC's pleadings in this case never indicated that it was going to attempt to collect judgment from the Appellants. Instead, the MTC argues that the quick-take provisions put Appellants on notice that the funds deposited with the trial court might have to be returned to the MTC. Section 11-27-87 states that, if the jury award is less than the deposit, "the plaintiff shall be entitled to a personal judgment against the owner for the amount of the difference." (Emphasis added). The MTC claims that the Bank was an owner of the funds because its endorsement was required for Sherry to negotiate the check; thus, the Bank could force Sherry to apply the check to its loan. *653 However, as we noted above, this argument is incorrect. The payees were listed in the alternative; therefore, Sherry could negotiate the check alone. See Miss.Code Ann. § 75-3-110(d). MTC's argument is further negated by the fact that Harrison, the trustee, never endorsed the check. This clearly indicates that the endorsement of all the parties was not required for Sherry to negotiate the check.
¶ 21. The Appellants did file an answer in this case requesting that any compensation awarded in this matter be paid first to the Bank to satisfy the indebtedness on Sherry's mortgage. However, that answer was filed on February 4, 2000over eight years before the judgment was entered in this case. We agree that the Bank, at that time, could have been considered an "owner" of the funds because it still had a lien on the property. However, that lien was long extinguished before the judgment was entered.
¶ 22. The MTC claims that Sherry does not have the funds for repayment purposes because she used the funds to extinguish a loan held by the Bank. However, again, it is Sherry who benefitted from this transaction as she now holds the land free and clear of the encumbrance of the mortgage loan.
¶ 23. Due to the considerable delay between the time the funds were disbursed and the time of trial, we find it prejudicial and inequitable for the trial court to hold that the Appellants failed to appear and defend their interests. Their interests were dissolved at the moment Sherry's loan was extinguished. They were not on notice that they would be liable to the MTC under the quick-take provisions because they had no reason to believe they were still an "owner" of the property.
¶ 24. The trial court had a "grand reservoir of equitable power to do justice" and grant the Appellants relief from the judgment. Bryant, Inc. v. Walters, 493 So.2d 933, 939 (Miss.1986) (citation omitted). We find that sufficient evidence exists to show that the trial court abused its discretion in denying the Appellants' motion to amend the judgment or, alternatively, for relief from the judgment. Accordingly, the judgment of the trial court is reversed, and the case is remanded for the trial court to grant such relief.
¶ 25. THE JUDGMENT OF THE WEBSTER COUNTY SPECIAL COURT OF EMINENT DOMAIN IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
MYERS, P.J., BARNES, ISHEE AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., LEE, P.J., AND CARLTON, J.
ROBERTS, J., dissenting:
¶ 26. The majority finds that the trial court abused its discretion when it denied the Appellants' post-trial motions because the Appellants were merely nominal parties with no interest in the eminent domain proceedings after Sherry Mann (Sherry) satisfied the debts on her property. Consequently, the majority concludes that it was manifestly unjust for the trial court to hold the Appellants responsible for reimbursing the Mississippi Transportation Commission (MTC). With utmost respect for the majority, I do not reach the same conclusion. The brief discussion of the facts that follows is not due to any inadequacies in the majority's well-written opinion, but it is to provide a framework for my own opinion.
*654 ¶ 27. The broad issue on appeal is whether the Appellants should be liable for reimbursing the MTC for money that it deposited as the tentative figure necessary to compensate Sherry for the MTC's taking of an approximately 1.45-acre portion of Sherry's property in Webster County, Mississippi. When the MTC filed its initial complaint in October 1998, it sought to utilize the statutory "pre-take" eminent domain proceedings set forth within Mississippi Code Annotated section 65-1-301 to -347 (Rev.2005). The MTC filed a statement of value and claimed just compensation for the taking was $14,450. Accordingly, the MTC deposited that figure with the Webster County Circuit Clerk.
¶ 28. In April 1999, Sherry moved to dismiss the MTC's complaint on the basis that the Mississippi Supreme Court had determined that section 65-1-301 to -347 was unconstitutional.[5] The MTC opposed Sherry's motion to dismiss, but it ultimately amended its complaint and opted to proceed pursuant to the "quick-take" provisions set forth in Mississippi Code Annotated section 11-27-81 to -91 (Rev.2004), rather than the "pre-take" procedure set forth in section 65-1-301 to -347.
¶ 29. The circuit court convened a special court of eminent domain (the trial court) and appointed Andy Johnson, Jr., an independent, disinterested appraiser to provide an appraisal of the property at issue pursuant to the "quick-take" proceedings. Johnson's appraisal reflected his opinion that the MTC should pay Sherry $57,400 as compensation for taking the 1.45-acre section of her fifty-acre parcel of property.
¶ 30. In September 1999, the trial court granted the MTC the right to immediate title to and possession of the property. However, the trial court's order reflected that the MTC's right to immediate title to and possession of the property was conditioned upon the MTC's deposit of the difference between the amount it had previously deposited and Johnson's appraised value of the property. Shortly afterward, the MTC deposited $42,950 with the circuit clerk. The trial court then ordered "that the sum of $57,400.00 which has been deposited to this [c]ourt is to be released to the defendants immediately."
¶ 31. In November 1999, the circuit clerk wrote a check for the value of the deposit to multiple parties, including the Appellants. As the majority notes, Sherry presented the check to Regions Bank f/k/a AmSouth Bank (the Bank) to satisfy all or part of an unspecified debt. It is possible that Sherry paid off some portion of her mortgage debt with the Bank, but the record does not indicate exactly to what debt those funds were applied.
¶ 32. In January 2000, the MTC amended its complaint for the second time.[6] In February 2000, the Bank filed an answer to the MTC's second amended complaint. According to the Bank, it was "the beneficiary of duly recorded deeds of trust on the subject property." The Bank went on to state that "[a]ny distributions, compensation or awards in this proceeding should be paid first to Bank [sic] to satisfy the indebtedness then due, if any."
¶ 33. After numerous attempts to set a trial date, changes in defense counsel, and *655 various discovery issues, the trial court finally scheduled the matter for trial to occur in June 2008. During the trial, the jury found that the MTC should pay Sherry $14,500 for taking the 1.45-acre portion of property at issue. The MTC subsequently sought reimbursement of the difference between the amount deposited and disbursed and the judgment amount.
¶ 34. Despite having received notice of the trial, the Bank's attorney contacted the MTC's attorney and stated that he would not be appearing at the hearing. The Appellants neglected to attend the hearing, and the trial court held that the Appellants would be responsible for reimbursing the MTC. The Appellants later unsuccessfully sought post-trial relief from the trial court's judgment. The majority finds that the trial court abused its discretion when it denied the Appellants' motion for relief from judgment. I respectfully disagree.
¶ 35. "The grant or denial of a Rule 60(b) motion is generally within the discretion of the trial court." Am. Cable Corp. v. Trilogy Commc'ns, Inc., 754 So.2d 545, 549 (¶ 7) (Miss.Ct.App.2000). The majority mentions that previous unrelated pleadings were not properly served on the Bank; the Bank's lawyer was of the opinion that the Bank no longer had an interest in the property; and the MTC's lawyer did not persuade the Bank's lawyer to appear. The majority also emphasizes that the MTC's lawyer did not tell the Appellants that he would try to recover a judgment from them. However, there is no indication that the MTC's lawyer ever commented on the matter in any form. That is, the MTC's lawyer did not say he would or would not attempt to collect any judgment from the Bank or any other particular party. However, it openly proceeded pursuant to section 11-27-81 to -91, and Mississippi Code Annotated section 11-27-87 (Rev.2004) clearly includes a provision stating that the MTC would be entitled to reimbursement if the amount deposited was in excess of the value of the property. The Appellants simply made a calculated, unilateral decision that they had no interest in attending the hearing.
¶ 36. It is noteworthy that the Appellants never sought to be dismissed from the litigation. According to the Appellants, at some unspecified point in the proceedings, Sherry satisfied her debt, and as a result the Appellants no longer had an interest in the litigation. The record does not specify when Sherry satisfied her debt. More importantly, the Appellants were never dismissed as parties to the litigation. They merely decided that they would not attend the hearing. I can find no authority authorizing a defendant to unilaterally dismiss himself from a civil suit without leave or permission of the trial court.
¶ 37. The majority finds that the trial court's decision to deny the Appellants' post-trial motion results in manifest injustice because Sherry benefitted from the disbursement. However, the Appellants also benefitted from the disbursement. Sherry presented all of the "quick-take" funds to the Bank to satisfy at least some portion of her debt. Accordingly, the Bank no longer had to manage the risk that accompanied the possibility of Sherry defaulting on her mortgage. Assuming Sherry did not satisfy the remainder of her debt with the Bank when she tendered the disbursement funds, once those funds were applied to Sherry's mortgage, the Bank instantly received greater security on her mortgage because it was less likely that Sherry would default on the property in which she had more equity. Additionally, the Bank benefitted in that it earned interest on the money that it had previously loaned to Sherry.
¶ 38. Mississippi Code Annotated section 11-27-87 sets forth that, in the event *656 deposited and disbursed funds are greater than the value of property subject to eminent domain proceedings, the entity proceeding pursuant to section 11-27-87 is entitled to a "personal judgment against the owner." (Emphasis added). The majority finds that the Appellants were "owners" at one time, but they ceased to be owners when Sherry satisfied her debt. I agree that the Appellants were "owners" at the time the proceedings were initiated.[7] The deed of trust provided that the Trustee was to hold legal title to Sherry's land on behalf of the Bank's interest in the property. They may very well have ceased to be "owners" when Sherry satisfied her debtwhenever that was, as the record does not indicate suchbut the Appellants may not simply decide on their own that they will neglect to attend court proceedings because, in their opinion, they have no more interest in the litigation. They made a calculated decision to forego attending the hearing, and they did so at their own peril.
¶ 39. According to the majority, the Appellants had no reason to know that they were still "owners" of the property at issue. However, they had every reason to know they were parties to the litigation. They made an informed decision not to attend the trial. They did not seek to be dismissed from the case, and they never informed the trial court that they had no interest in the litigation. They simply decided that, although they were parties to litigation, they had no reason to attend the trial. I find no manifest injustice where parties choose to avail themselves of a court and then refuse to attend further proceedings once they decide, on their own, that they are through attending court proceedings. In my opinion, the trial court did not abuse its discretion. I would concur with the majority if the Bank would have timely informed the trial court that it had applied the disbursement funds to Sherry's debt and that it had released its interest on the 1.45-acre section of property at issue and then moved to be dismissed from the litigation and, after having done so, then received more disbursement funds from Sherry. Under the present circumstances, however, I would hold that the trial court acted well within its discretion when it denied the Appellants' motion for relief from the judgment when their only argument for relief was that they did not want to attend a hearing despite their being parties to the litigation and the clear statutory provision that certainly included them as parties from which the MTC could seek reimbursement. Just as every other litigant, the Appellants were charged with knowledge of the law, including section 11-27-87. Accordingly, I respectfully dissent.
KING, C.J., LEE, P.J., AND CARLTON, J., JOIN THIS OPINION.
NOTES
[1] The Bank and trustee will be referred to collectively as the "Appellants."
[2] The complaint was later amended to seek immediate title and possession under Mississippi's quick-take provision codified at Mississippi Code Annotated sections 11-27-81 to -91 (Rev.2004).
[3] The MTC argues that the record is unclear that it was, in fact, Sherry's loan to which the funds were applied because the loan is merely referred to by number. However, the MTC then argues that the Bank controlled the funds by requiring that the funds be applied to Sherry's loan. Such argument essentially concedes that the funds were applied to Sherry's loan as there is nothing in the record that would indicate otherwise.
[4] Mississippi Code Annotated section 75-3-110(d) states that:

If an instrument is payable to two (2) or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two (2) or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to two (2) or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively.
[5] In Lemon v. Mississippi Transportation Commission, 735 So.2d 1013, 1020 (¶ 30) (Miss.1999), the Mississippi Supreme Court found that the condemnation proceedings set forth in 65-1-301 to -347 were unconstitutional violations of the right to procedural due process.
[6] The MTC stated that it had recently discovered that, on November 5, 1999, Sherry had conveyed her property to her mother, Peggy Mann. The MTC sought to amend its complaint to include Peggy and Wayne Mann, Peggy's husband, as defendants.
[7] A "legal owner" is "one in whom the legal title to real estate is vested, but who holds it in trust for the benefit of another, the latter being called the `equitable' owner." Black's Law Dictionary 1106 (6th ed. 1990). A deed of trust "serv[es] the uses of a mortgage, by which the legal title to real property is placed in one or more trustees, to secure repayment of a sum of money or the performance of other conditions." Id. at 414. Accordingly, the Trustee had legal title and was, therefore, a "legal owner." As for the Bank, pursuant to Mississippi law, a mortgage "shall mean and include a deed of trust." Miss.Code Ann. § 75-9-102(a)(55) (Rev.2002). Sherry was, therefore, a mortgagor, and a mortgagor gives "legal title or a lien" to a mortgagee as security for a loan. Black's Law Dictionary 1012 (6th ed. 1990). Since (1) Sherry's deed of trust is considered a mortgage pursuant to Mississippi law, and (2) Sherry (the mortgagor) gave the Bank (the mortgagee) legal title to the property, the Bank also was a "legal owner" of the property at issue.