ROBERTS, J.,
dissenting:
. ¶ 26. The majority finds that the trial court abused its discretion when it denied the Appellants’ post-trial motions because the Appellants were merely nominal parties with no interest in the eminent domain proceedings after Sherry Mann (Sherry) satisfied the debts on her property. Consequently, the majority concludes that it was manifestly unjust for the trial court to hold the Appellants responsible for reimbursing the Mississippi Transportation Commission (MTC). With utmost respect for the majority, I do riot reach the same conclusion. The brief discussion of the facts that follows is not due to any inadequacies in the majority’s well-written opinion, but it is to provide a framework for my own opinion.
*654 ¶27. The broad issue on appeal is whether the Appellants should be liable for reimbursing the MTC for money that it deposited as the tentative figure necessary to compensate Sherry for the MTC’s taking of an approximately 1.45-acre portion of Sherry’s property in Webster County, Mississippi. When the MTC filed.its initial complaint in October 1998, it sought to utilize the statutory “pre-take” eminent domain proceedings set forth within Mississippi Code Annotated section 65-1-301 to -347 (Rev.2005). The MTC filed a statement of value and claimed just compensation for the taking was $14,450. Accordingly, the MTC deposited that figure with the Webster County Circuit Clerk.
¶ 28. In April 1999, Sherry moved to dismiss the MTC’s complaint on the basis that the Mississippi Supreme Court had determined that section 65-1-301 to -347 was unconstitutional.[5] The MTC opposed Sherry’s motion to dismiss, but it ultimately amended its complaint and opted to proceed pursuant to the “quick-take” provisions set forth in Mississippi Code Annotated section 11-27-81 to -91 (Rev.2004), rather than the “pre-take” procedure set forth in section 65-1-301 to -347.
¶ 29. The circuit court convened a special court of eminent domain (the trial court)- and appointed Andy Johnson, Jr., an independent, disinterested appraiser to provide an appraisal of the property at issue pursuant to the “quick-take” proceedings. Johnson’s appraisal reflected his opinion that the MTC should pay Sherry $57,400 as compensation for taking the 1.45-acre section of her fifty-acre parcel of property.
¶ 30. In September 1999, the trial court granted the MTC the right to immediate title to and possession of the property. However, the trial court’s order reflected that the MTC’s right to immediate title to and possession of the property was conditioned upon the MTC’s deposit of the difference between the amount it had previously deposited and Johnson’s appraised value of the -property. Shortly afterward, the MTC deposited $42,950 with the circuit clerk.,The trial court then ordered “that the sum of $57,400.00 which has been deposited to this [cjourt is to be released to the defendants immediately.”
¶31. In November 1999, the circuit clerk wrote a check for the value of the deposit to multiple parties, including the Appellants. As the majority notes, Sherry presented the check to Regions Bank fik/a AmSouth Bank (the Bank) to satisfy all or part of an unspecified debt. It is possible that Sherry paid off some portion of her mortgage debt with the Bank, but the record does not indicate exactly to what debt those funds were applied.
¶ 32. In January 2000, the MTC amended its complaint for the second time.[6] In February 2000, the Bank filed an answer to the MTC’s second amended complaint. According to the Bank, it was “the beneficiary of duly recorded deeds of trust on the subject property.” The Bank went on to state that “[a]ny distributions, compensation or awards in this proceeding should be paid first to Bank [sic] to satisfy the indebtedness then due, if any.”
¶33. After-numerous attempts to set a trial date, changes in defense counsel, and *655 various discovery issues, the trial court finally scheduled the matter for trial to occur in June 2008. During the trial, the jury found that the MTC should pay Sherry $14,500 for taking the 1.45-acre portion of property at issue. The MTC subsequently sought reimbursement of the difference between the amount deposited and disbursed and the judgment amount.
¶ 34. Despite having received notice of the trial, the Bank’s attorney contacted the MTC’s attorney and stated that he would not be appearing at the hearing. The Appellants neglected to attend the hearing, and the trial court held that the Appellants would be responsible for reimbursing the MTC. The Appellants later unsuccessfully sought post-trial relief from the trial court’s judgment. The majority finds that the trial court abused its discretion when it denied the Appellants’ motion for relief from judgment. I respectfully disagree.
¶35. “The grant or denial of a Rule 60(b) motion is generally within the discretion of the trial court.” Am. Cable Corp. v. Trilogy Commc’ns, Inc., 754 So.2d 545, 549 (¶ 7) (Miss.Ct.App.2000). The majority mentions that previous unrelated pleadings were not properly served on the Bank; the Bank’s lawyer was of the opinion that the Bank no longer had an interest in the property; and the MTC’s lawyer did not persuade the Bank’s lawyer to appear. The majority also emphasizes that the MTC’s lawyer did not tell the Appellants that he would try to recover a judgment from them. However, there is no indication that the MTC’s lawyer ever commented on the matter in any form. That is, the MTC’s lawyer did not say he would or would not attempt to collect any judgment from the Bank or any other particular party. However, it openly proceeded pursuant to section 11-27-81 to -91, and Mississippi Code Annotated section 11-27-87 (Rev.2004) clearly includes a provision stating that the MTC would be entitled to reimbursement if the amount deposited was in excess of the value of the property. The Appellants simply made a calculated, unilateral decision that they had no interest in attending the hearing.
¶ 36. It is noteworthy that the Appellants never sought to be dismissed from the litigation. According to the Appellants, at some unspecified point in the proceedings, Sherry satisfied her debt, and as a result the Appellants no longer had an interest in the litigation. The record does not specify when Sherry satisfied her debt. More importantly, the Appellants were never dismissed as parties to the litigation. They merely decided that they would not attend the hearing. I can find no authority authorizing a defendant to unilaterally dismiss himself from a civil suit without leave or permission of the trial court.
¶ 37. The majority finds that the trial court’s decision to deny the Appellants’ post-trial motion results in manifest injustice because Sherry benefitted from the disbursement. However, the Appellants also benefitted from the disbursement. Sherry presented all of the “quick-take” funds to the Bank to satisfy at least some portion of her debt. Accordingly, the Bank no longer had to manage the risk that accompanied the possibility of Sherry defaulting on her mortgage. Assuming Sherry did not satisfy the remainder of her debt with the Bank when she tendered the disbursement funds, once those funds were applied to Sherry’s mortgage, the Bank instantly received greater security on her mortgage because it was less likely that Sherry would default on the property in which she had more equity. Additionally, the Bank benefitted in that it earned interest on the money that it had previously loaned to Sherry.
¶ 38. Mississippi Code Annotated section 11-27-87 sets forth that, in the event *656 deposited and disbursed funds are greater than the value of property subject to eminent domain proceedings, the entity proceeding pursuant to section 11-27-87 is entitled to a “personal judgment against the owner.” (Emphasis added). The majority finds that the Appellants were “owners” at one time, but they ceased to be owners when Sherry satisfied her debt. I agree that the Appellants were “owners” at the time the proceedings were initiated.[7] The deed of trust provided that the Trustee was to hold legal title to Sherry’s land on behalf of the Bank’s interest in the property. They may very well have ceased to be “owners” when Sherry satisfied her debt — whenever that was, as the record does not indicate such — but the Appellants may not simply decide on their own that they will neglect to attend court proceedings because, in their opinion, they have no more interest in the litigation. They made a calculated decision to forego attending the hearing, and they did so at their own peril.
¶ 39. According to the majority, the Appellants had no reason to know that they were still “owners” of the property at issue. However, they had every reason to know they were parties to the litigation. They made an informed decision not to attend the trial. They did not seek to be dismissed from the case, and they never informed the trial court that they had no interest in the litigation. They simply decided that, although they were parties to litigation, they had no reason to attend the trial. I find no manifest injustice where parties choose to avail themselves of a court and then refuse to attend further proceedings once they decide, on their own, that they are through attending court proceedings. In my opinion, the trial court did not abuse its discretion. I would concur with the majority if the Bank would have timely informed the trial court that it had applied the disbursement funds to Sherry’s debt and that it had released its interest on the 1.45-acre section of property at issue and then moved to be dismissed from the litigation and, after having done so, then received more disbursement funds from Sherry. Under the present circumstances, however, I would hold that the trial court acted well within its discretion when it denied the Appellants’ motion for relief from the judgment when their only argument for relief was that they did not want to attend a hearing despite then being parties to the litigation and the clear statutory provision that certainly included them as parties from which the MTC could seek reimbursement. Just as every other litigant, the Appellants were charged with knowledge of the law, including section 11-27-87. Accordingly, I respectfully dissent.
KING, C.J., LEE, P.J., AND CARLTON, J., JOIN THIS OPINION.

. In Lemon v. Mississippi Transportation Commission, 735 So.2d 1013, 1020 (¶ 30) (Miss.1999), the Mississippi Supreme Court found that the condemnation proceedings set forth in .65-1-301 to -347 were unconstitutional violations of the right to procedural due process.

. The MTC stated that it had recently discovered that, on November 5, 1999, Sherry had conveyed her property to her mother, Peggy Mann. The MTC sought to amend its complaint to include Peggy and Wayne Mann, Peggy’s husband, as defendants.

. A "legal owner” is "one in whom the legal title to real estate is vested, but who holds it in trust for the benefit of another, tíre latter being called the 'equitable' owner.” Black’s Law Dictionary 1106 (6th ed. 1990). A deed of trust "serv[es] the uses of a mortgage, by which the legal title to real property is placed in one or more trustees, to secure repayment of a sum of money or the performance of other conditions.” Id. at 414. Accordingly, the Trustee had legal title and was, therefore, a "legal owner.” As for the Bank, pursuant to Mississippi law, a mortgage "shall mean and include a deed of trust.” Miss.Code Ann. § 75-9-102(a)(55) (Rev.2002). Sherry was, therefore, a mortgagor, and a mortgagor gives "legal title or a lien” to a mortgagee as security for a loan. Black’s Law Dictionary 1012 (6th ed. 1990). Since (1) Sherry’s deed of trust is considered a mortgage pursuant to Mississippi law, and (2) Sherry (the mortgagor) gave the Bank (the mortgagee) legal title to the property, the Bank also was a "legal owner” of the properly af issue.